No. 2--97--0508

__________________________________________________________________

IN THE 

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

HARRIS BANK ST. CHARLES, ) Appeal from the Circuit Court

) of Kane County

Plaintiff, )

)

)   

) No. 93--CH--0332

RAY WEBER, )

)

Defendant and Counter- )

defendant-Appellee and )

Cross-Appellant ) 

)

(Bruce Dent; Midwest Webco, )

Inc.; Theodore R. Ranney, ) 

Indiv.; Margaret A. Ranney; )

Galland Henning Nopak, Inc.; ) 

Unknown Owners; and Nonrecord ) 

Claimants, Defendants; Theodore )

R. Ranney, as Trustee of the ) 

Theodore R. Ranney Trust dated ) 

January 4, 1979, Defendant and ) Honorable

Counterplaintiff-Appellant and ) Melvin E. Dunn,

Cross-Appellee). ) Judge, Presiding. 

__________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

On February 14, 1994, the trial court entered an agreed judgment of foreclosure against three parcels of property at 33 W 749 Reed Road in Geneva, Illinois.  The proceeds from the judicial sale of the property were insufficient to satisfy the claim of 

defendant-counterplaintiff, Theodore R. Ranney, as trustee of the Theodore R. Ranney Trust (Trust), the holder of a junior mortgage given by defendants Ray Weber and Bruce Dent.  On September 20, 1994, the Trust obtained a deficiency judgment of $320,708.24 against Weber and Dent.  In October 1996, Weber filed a motion to strike the sheriff’s sale of his home to satisfy this judgment, asserting that, on April 13, 1994, he had transferred the home into tenancy by the entirety with his wife.  

The Trust appeals the trial court’s April 14, 1997, order striking the sheriff’s sale.  Weber has filed a cross-appeal challenging the trial court’s order granting the Trust’s motion to strike his answer to the Trust’s request for admission of facts and finding all facts contained in the request to be deemed admitted.  We reverse the order striking the sheriff’s sale but affirm the order striking Weber’s answer to the request for admission of facts.   

The facts relevant to this appeal are as follows.  In 1989, defendants Margaret and Theodore Ranney loaned Ray Weber and Bruce Dent $333,591.05 in exchange for a junior mortgage on the Reed Road property.  Around the same time, they loaned defendant Midwest Webco, Inc., of which Weber and Dent were principal shareholders, $200,000 in exchange for a note for that amount and a security interest in the corporation’s assets.  Weber and Dent also gave the Ranneys a security interest in these assets to secure their junior mortgage.  In November 1990, the Ranneys transferred their interest in the mortgage on the Reed Road property to the Theodore R. Ranney Trust and transferred their interest in the $200,000 note to the Margaret A. Ranney Trust.

On August 6, 1993, Midwest Webco, Inc., assigned its assets for the benefit of its creditors to Jerome Frett, who was to liquidate the assets.   On October 14, 1993, an auction was held at which these assets were sold.  According to Weber, he did not become aware of the amount or distribution of the proceeds until June 1994.

On September 16, 1993, plaintiff Harris Bank, the holder of the senior mortgage on the Reed Road property, filed a complaint for foreclosure of its mortgage.  The trial court gave the Trust leave to intervene in this action as a defendant and to file a counterclaim against the defendants (other than the Ranneys) for foreclosure of its junior mortgage. 

On February 14, 1994, the trial court entered an agreed judgment of foreclosure and sale of the Reed Road property.  The court found that Harris Bank’s mortgage lien was superior to all others and that the Trust’s mortgage lien was second in priority.  It ordered the property to be sold and the proceeds of the sheriff’s sale to be distributed according to this priority.

On March 19, 1994, Weber married Jane Kaufmann.  At the time, title to his home in Batavia, Illinois, was in his name only.  On April 13, 1994, he transferred title in his home to himself and Kaufmann as tenants by the entirety.

On May 27, 1994, Harris made a successful bid for the Reed Road property at the sheriff’s sale.  Its bid was equal to the amounts owed to it plus the sheriff’s fees and commission.  Consequently, there were no funds from the sale to satisfy the Trust’s lien on the property.  On June 3, 1994, the trial court entered an order approving the sale and distribution of the proceeds.  On that same day, the Trust filed a motion for a deficiency judgment against Weber and Dent.

On September 20, 1994, the trial court entered a deficiency judgment in favor of the Trust and against Weber and Dent in the amount of $320,708.24.  Thereafter, the Trust filed a memorandum of this judgment in Kane County, and a sheriff’s sale of Weber’s home was scheduled.  

A few days before the sheriff’s sale was to take place, Weber filed a motion to strike the sale.  In his motion, he claimed that his home could not be sold to pay the Trust’s deficiency judgment because the home had been transferred into tenancy by the entirety in April 1994.  In support of his motion, Weber relied on the decision in 
E.J. McKernan Co. v. Gregory
, 268 Ill. App. 3d 383 (2d Dist. 1994), in which this court held that a judgment debtor’s transfer of property into tenancy by the entirety in order to shield that property from the judgment creditor cannot violate the Uniform Fraudulent Transfer Act (740 ILCS 160/1 
et seq
. (West 1992)).    

The Trust responded that the case should be governed by 
In re Marriage of Del Giudice
, 287 Ill. App. 3d 215 (1st
 Dist. 1997), in which, contrary to 
E.J. McKernan
, the first district held that a judgment debtor who attempts to avoid a judgment creditor by transferring property into tenancy by the entirety after a judgment has been entered may violate the Uniform Fraudulent Transfer Act.  According to the Trust, Weber’s transfer of the property was fraudulent under the Uniform Fraudulent Transfer Act because it occurred after the judgment of foreclosure was entered; he knew that the proceeds from the sheriff’s sale and auction of the corporate assets would be insufficient to satisfy the Trust’s claim; he received no consideration for the transfer to his wife; the transfer was of substantially all of his assets; and he continued to maintain control over the property after the transfer.

   After a hearing on March 14, 1997, the trial court granted Weber’s motion.  It found that it was required to follow 
E.J. McKernan Co. v. Gregory
, 268 Ill. App. 3d 383 (1994), because this was the controlling authority in its district.  Based on 
E.J. McKernan
, the court struck the sheriff’s sale.

The Trust raises two contentions on appeal: (1) the trial court erred in holding that Weber’s transfer of title to his home to tenancy by the entirety did not violate the Uniform Fraudulent Transfer Act, and (2) the trial court was required to follow 
Del Giudice
, the most recent appellate court decision, rather than 
E.J. McKernan
, the decision of the appellate court in the district where it was located.  

The trial court correctly found that it was bound to follow our decision in 
E.J. McKernan
.  See 
Aleckson v. Village of Round Lake Park
, 176 Ill. 2d 82, 92 (1997).  Effective August 22, 1997, however, the tenancy by the entirety provision contained in the Code of Civil Procedure was amended.  See 735 ILCS Ann. 5/12--112 (Smith-Hurd 1998).  The parties have failed to discuss the effect of this amendment in their briefs.  However, we find it necessary 
sua sponte
 to address this issue, which we find dispositive.
  See 
Barnett v. Zion Park District
, 171 Ill. 2d 378, 389 (1996); 
Hux v. Raben
, 38 Ill. 2d 223, 224 (1967)
.  Based on this amendment, we hold that 
E.J. McKernan
 and 
Del Giudice
 are no longer valid, we reverse the judgment of the trial court, and we remand the cause for further proceedings consistent with the amended language of the statute.

We begin our discussion of the amendment with a description of its background.  Under the Joint Tenancy Act (765 ILCS 1005/0.01 
et seq
. (West 1992)) a husband and wife may hold property as tenants by the entirety (765 ILCS 1005/1c (West 1992)).  Prior to the 1997 amendment, the Code of Civil Procedure provided, without qualification, that, when a husband and wife hold property as tenants by the entirety, the property may not be attached by a creditor of one spouse:

"Any real property held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants."  735 ILCS 5/12--112 (West 1992).

Although the tenancy by the entirety statutes permit married individuals to protect their property from creditors of one spouse by transferring it into tenancy by the entirety, the Uniform Fraudulent Transfer Act prohibits transfers with the intent to defraud a creditor:

"(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: 

***

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."  740 ILCS 160/5(a) (West 1992).

The Uniform Fraudulent Transfer Act lists eleven factors that may be considered among other factors in determining whether a debtor made a transfer with actual intent under paragraph (1) of subsection (a).  See 740 ILCS 160/5(b) (West 1992).

In 
E.J. McKernan
 and 
Del Giudice
, the courts attempted to reconcile the protections contained in the tenancy by the entirety provisions with the restrictions of the Uniform Fraudulent Transfer Act.  In 
E.J. McKernan Co. v. Gregory
, 268 Ill. App. 3d 383 (1994), we held that the Uniform Fraudulent Transfer Act does not apply to transfers into tenancy by the entirety.  In that case, the defendant and his wife owned their home as joint tenants but conveyed title to themselves as tenants by the entirety after judgment was entered against the defendant.  
E.J. McKernan
, 268 Ill. App. 3d at 388.

In upholding the validity of this transfer, we explained that, although the Uniform Fraudulent Transfer Act prohibits transfers made with the intent to hinder, delay, or defraud creditors,

"intent is irrelevant in a tenancy by the entirety conveyance because it simply cannot be fraudulent to engage in conduct that is specifically and unambiguously sanctioned by statute.  A plain reading of the tenancy by the entirety statutes makes it clear that no mental state is required to use the tenancy’s protection."  
E.J. McKernan
, 268 Ill. App. 3d at 390.

We therefore concluded that the legislature did not intend the Uniform Fraudulent Transfer Act to apply to transfers into tenancy by the entirety and reversed the trial court’s order refusing to restrain the sale of the defendant’s home.  
E.J. McKernan
, 268 Ill. App. 3d at 390-91.

Conversely, in 
In re Marriage of Del Giudice
, 287 Ill. App. 3d 215 (1997), the first district held that transfers into tenancy by the entirety 
are
 subject to the restrictions of the Uniform Fraudulent Transfer Act.  
Del Giudice
, 287 Ill. App. 3d at 218-19.  Although the facts of the 
Del Giudice
 case were almost identical to those in 
E.J. McKernan
, the court declined to follow our decision in that case.  The 
Del Giudice
 court stated that it disagreed that the intent behind a transfer of title to tenancy by the entirety is irrelevant simply because the tenancy by the entirety statutes permit married couples to use the tenancy to shelter their property from creditors.  According to the 
Del Giudice
 court, such transfers may nevertheless be fraudulent because the purpose of the Uniform Fraudulent Transfer Act is to "invalidate otherwise sanctioned transactions made with a fraudulent intent."  
Del Giudice
, 287 Ill. App. 3d at 218.
  
Thus, the court held that the trial court erred in finding that the defendant’s retitling of his property could not violate the Uniform Fraudulent Transfer Act and remanded the cause for the trial court to apply the Act.  
Del Giudice
, 287 Ill. App. 3d at 219.

In August 1997, however, the legislature amended the tenancy by the entirety provision contained in the Code of Civil Procedure as follows:

"Any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, 
except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor’s ability to pay those debts as they become due
."  (Emphasis added.) 735 ILCS Ann. 5/12--112 (Smith-Hurd 1998).

The legislature specified that this amendment "is intended as a clarification of existing law and not as a new enactment" (735 ILCS Ann. 5/12--112 (Smith-Hurd 1998)).

Given that the amendment became effective subsequent to the transfer and the trial court’s decision in this case, we must first determine whether it applies to the facts before us.  Generally, an amendment will be considered prospective, but the presumption of prospective application does not apply when the amendment  merely clarifies existing law.  
Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc.
, 240 Ill. App. 3d 360, 364-65 (1992).  When the legislature has made a material change to a statute, it is presumed that the legislature intended to change the law. 
Board of Trustees of Southern Illinois University v. Department of Human Rights
, 159 Ill. 2d 206, 213 (1994).  That presumption, however, can be rebutted by evidence of legislative intent to merely clarify the law.  
State of Illinois v. Mikusch
, 138 Ill. 2d 242, 252 (1990).  Also, when an amendment follows a controversy concerning the interpretation of the original statute, courts will regard the amendment as a clarification of, rather than a change in, existing law.  
Church v. State of Illinois
, 164 Ill. 2d 153, 163-64 (1995).   For example, in 
Varelis v. Northwestern Memorial Hospital
, 167 Ill. 2d 449 (1995), the supreme court held that an amendment made in response to a conflict among appellate court districts was merely a clarification of existing law.  In that case, the issue was whether the personal representative of a decedent could bring an action under the Wrongful Death Act (Ill. Rev. Stat. 1987, ch. 70, par. 1 
et seq.
 (now 740 ILCS 180/0.01 
et seq.
 (West 1996))) when, during his lifetime, the decedent had obtained a judgment in a personal injury action based on the same incident.  
Varelis
, 167 Ill. 2d at 450-51.  

Until 1995, the Wrongful Death Act did not expressly address whether a wrongful death action could be maintained under these circumstances, and a split in the appellate court developed with respect to this issue.  While decisions from the first district permitted successive personal injury and wrongful death actions, a fourth district decision did not. 
Varelis
, 167 Ill. 2d at 452-55.

In 1995, however, the legislature amended the Wrongful Death Act to expressly prohibit a wrongful death action when the decedent has already obtained a judgment as the result of a personal injury lawsuit based on the same occurrence.  Although the amendatory act provided that it applied to actions accruing on or after its effective date, March 9, 1995, and the decedent in 
Varelis
 died in 1989, the supreme court nevertheless applied the amendment in 
Varelis
 because it found that the amendment was a clarification of existing law.  
Varelis
, 167 Ill. 2d at 451, 461-65.  

In support of its finding that the amendment clarified rather than changed existing law, the supreme court noted that, in the legislative debates, legislators had indicated that the amendment was intended to address the conflict in appellate court decisions.  Because the amendment was made in response to decisions permitting successive personal injury and wrongful death actions and was designed to explain whether the Wrongful Death Act applied in these circumstances, the supreme court held that it was intended as a clarification of existing law rather than a change in substantive law.  
Varelis
, 167 Ill. 2d at 461-63.

We believe that the amendment at issue in the case before us was also intended only as a clarification of existing law.  First, the legislature explicitly provided that it was intended as a clarification and not as a new enactment.  In addition, as in 
Varelis
, the legislative debates indicate that the amendment was the result of an appellate court conflict concerning   the interpretation of the statute.  At the time the bill was passed by the Senate, Senator Cullerton stated:

"The purpose of this bill is to overcome what was viewed by many as a wrongly decided case out in DuPage County dealing with a person who transferred his home into tenancy by the entirety after a judgment against him had been entered.  Purpose of this bill is to go back to what our original intent was with regard to tenancy by the entirety and not [to] allow -- for that type of a -- of a situation to prevail."  90th
 Ill. Gen. Assem., Senate Proceedings, June 1, 1997, at 33-34.

There is little doubt that Senator Cullerton’s mention of the "case out in DuPage County" was a reference to 
E.J. McKernan
.  Based on 
Varelis
, we find that the 1997 amendment was a clarification of existing law and must be applied to the facts before us.

Next, we must decide the meaning of the "clarification" made by the amendment.  When a statute has been amended, courts are to construe the language of the amendment together with the original act.  
People v. Woodard
, 175 Ill. 2d 435, 444 (1997).  In interpreting a statute, courts seek to ascertain and give effect to the intent of the legislature, and the best indication of that intent is the plain language of the statute itself.  
Bubb v. Springfield School District 186
, 167 Ill. 2d 372, 381 (1995).  

In this case, the relevant language is the provision added by the 1997 amendment, which states that the protections of the tenancy by the entirety do not apply when "the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor’s ability to pay those debts as they become due."  735 ILCS Ann. 5/12--112 (Smith-Hurd 1998).

It is clear from this language that our decision in 
E.J. McKernan
 is no longer valid.  In 
E.J. McKernan
, we held that intent is irrelevant to a transfer into tenancy by the entirety.  See 
E.J. McKernan
, 268 Ill. App. 3d at 390.  The amendment specifically provides, however, that property may be excluded from the protection of tenancy by the entirety, depending on the transferor’s intent.

Similarly, we believe that the decision in 
Del Giudice
 is inconsistent with the amendment.  In 
Del Giudice
, the court held that whether a transfer into tenancy by the entirety is valid depends on whether it violates the Uniform Fraudulent Transfer Act.  See 
Del Giudice
, 287 Ill. App. 3d at 218-19.  The language of the amendment, however, contains no reference to the Uniform Fraudulent Transfer Act.  Instead, it provides a much narrower circumstance in which a transfer will be considered invalid, namely, when the transferor’s "sole intent" is to avoid the payment of existing debts.  Based on this language, we must conclude that the legislature did not intend for the Uniform Fraudulent Transfer Act to 
apply to transfers into tenancy by the entirety. 

Although we believe that it is unnecessary to look to legislative history to interpret the unambiguous language of the amendment (see 
People v. Fitzpatrick
, 158 Ill. 2d 360, 364-65 (1994)), we note that the history of the amendment supports our interpretation of its effect on 
E.J. McKernan
 and 
Del Giudice
.  First, as we have already explained, the legislative debates indicate that the purpose of the clarification was to avoid the result reached in 
E.J. McKernan
.  In addition, the legislative history indicates that the legislature intentionally chose not to apply the Uniform Fraudulent Transfer Act to transfers into tenancy by the entirety.  An earlier version of the bill amending the statute provided that property transferred in violation of the Uniform Fraudulent Transfer Act would not be protected from creditors of one spouse.  Although the Senate passed this version of the bill, this language was removed from the bill, and the version of the bill that passed both houses contained language with no reference to the Uniform Fraudulent Transfer Act.

In light of the amendment, neither 
E.J. McKernan
 nor 
Del Giudice
 is a correct statement of the law.  Instead, we believe the language of the amendment clearly sets forth the standard that trial courts must apply when a creditor challenges a transfer into tenancy by the entirety: the property is not liable to be sold to satisfy a judgment against only one spouse unless the property was transferred with "the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor’s ability to pay those debts as they become due."  735 ILCS Ann. 5/12--112 (Smith-Hurd 1998).  As in other cases, the question of intent will be for the trier of fact.  See, 
e.g.
, 
Edward M. Cohon & Associates, Ltd. v. First National Bank
, 249 Ill. App. 3d 929,  936-38 (1993) (existence of intent to defraud under the Mechanics’ Lien Act (Ill. Rev. Stat. 1989, ch. 82, par. 1 
et seq.
) is a question for the trier of fact); 
Western States Insurance Co. v. Kelley-Williamson Co.
, 211 Ill. App. 3d 7, 12-13 (1991) (intent under an exclusionary clause of an insurance contract is a question of fact). 

In this case, the trial court based its decision to strike the sheriff’s sale on 
E.J. McKernan
 and, therefore, did not consider Weber’s intent in transferring his property into tenancy by the entirety.  Based on the 1997 amendment, we must reverse the trial court’s judgment striking the sheriff’s sale and remand for further proceedings to determine whether the exception contained in the amendment applies.

We now consider the issue raised in Weber’s cross-appeal, as the resolution of this matter will be relevant to the proceedings on remand.  In his cross-appeal, Weber argues that the trial court erred in granting the Trust’s motion to strike his answer to the Trust’s request for admission of facts.

During proceedings on Weber’s motion to strike the sheriff’s sale, the Trust served Weber with a request for admission of facts.  The request, which was served on December 2, 1996, asked Weber to admit or deny the following facts:

"1. That on or about October 22, 1992, Ray Weber as President of Midwest Webco, Inc. received a letter from Philip Pollack & Company indicating that Philip Pollack & Company had completed an appraisal of the liquidation value of the machinery and equipment of Midwest Webco., Inc. and setting forth an appraised liquidation value of $400,950.00 for all of said items. ***

That on or about October 14, 1993, machinery and equipment of Midwest Webco, Inc. were sold through an action [
sic
].

That proceeds received from said auction amounted to approximately $491,402.33.

That prior to April 13, 1994 this Defendant knew that the outstanding secured debts of Midwest Webco, Inc. for those creditors who had priority over the debt due the Plaintiff were as follows:

Lake Shore Bank $290,000.00 plus interest

Margaret A. Ranney Trust $144,000.00 plus interest

Galland Henning Nopak, Inc. $240,000.00 plus interest

That prior to April 13, 1994, Ray Weber knew that after the debts due the Lake Shore Bank, Margaret A. Ranney Trust, and Galland Henning Nopak, Inc. were satisfied out of the proceeds obtained from the auction of machinery and equipment of Midwest Webco, Inc. that no monies would be available to satisfy the debt due Theodore Ranney, as trustee of the Theodore R. Ranney Trust dated January 4, 1979."

Weber did not serve the Trust with an answer to this request until March 11, 1997.  In the answer, Weber asserted that the 

Pollack valuation was low, admitted that the machinery and equipment were sold at auction, claimed insufficient information to admit or deny the amount realized at the auction, and denied the remaining facts contained in the request.

Subsequently, the Trust filed a motion to strike the answer based on the fact that Weber had failed to respond to the request within 28 days.  Weber responded that his delay in filing his answer should be excused because it was attributable to the Trust.  He asserted that, before receiving the request for admission of facts, he was unaware of the exact dollar amount realized from the auction of the Midwest Webco, Inc., assets and contacted the Trust’s attorney late in December to request documentation to verify this amount.  According to Weber, the Trust’s attorney agreed to provide the documentation but never did so.  Weber also argued that the Trust’s motion should be denied because the request contained ultimate facts" and because the late filing of his answer did not prejudice the Trust.   

On March 14, 1997, after hearing the parties’ arguments, the trial court granted the Trust’s motion to strike the answer and held that the facts contained in the request were deemed to be admitted.  Weber now claims that the court’s ruling was an abuse of discretion.

Under Supreme Court Rule 216(c), factual matters contained in a request for admission of facts are deemed admitted unless the party served with the request denies them, explains why they cannot be admitted or denied, or objects to the request within 28 days.  134 Ill. 2d R. 216(c); 
People v. Mindham
, 253 Ill. App. 3d 792, 793-94 (1993).  A trial court has the discretion to permit a party to file a response to a request for admission of facts after the 28-day time limit but only if the party has shown "good cause" for an extension of time.  See 134 Ill. 2d R. 183; 
Bright v. Dicke
, 166 Ill. 2d 204, 209 (1995). 

In this case, the trial court properly granted the Trust’s motion to strike Weber’s answer to the request for admission of facts because he failed to show "good cause" for his failure to file a timely response to the request.  First, contrary to Weber’s argument, a lack of prejudice to the opposing party does not constitute "good cause."  See, 
e.g.
, 
Bright
, 166 Ill. 2d at 209.
  In addition, this court has previously held that it is not improper for a request for admission of facts to contain "ultimate facts."  See 
Mindham
, 253 Ill. App. 3d at 799.

Further, although Weber argues that his delay in filing his answer was caused by the Trust’s failure to provide documentation concerning one of the facts contained in the request, these facts do not establish good cause.  Weber does not explain why he failed to make a timely motion for an extension of time to respond.  In addition, contrary to his assertion, Weber did not need the documentation from the Trust in order to respond to the request for admission of facts.  Rule 216(c) permits a party to answer a request for admission of facts by explaining why the facts cannot be admitted or denied.  Consequently, Weber could have filed an answer explaining that he had insufficient information to admit or deny the dollar amount realized from the auction.  Indeed, he did just that in the answer he filed in March 1997.  The record contains no justification for his failure to file this answer within the 28-day time limit.

Thus, we find that the trial court did not abuse its discretion in granting the Trust’s motion to strike Weber’s response to its request for admission of facts and ordering that these facts be deemed admitted.  On remand, these facts will be deemed admitted.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed in part, reversed in part, and the cause is remanded.

Affirmed in part and reversed in part; cause remanded.

RATHJE, J., concurs.

JUSTICE HUTCHINSON, specially concurring:

I agree with the majority's order disposing of the Trust's appeal in this matter.  However, I believe that this court has an obligation to provide certain instructions on remand because I do not agree that the amendment in question (735 ILCS Ann. 5/12--112 (Smith-Hurd 1998)) is clear and unambiguous on its face.

The 1997 amendment adds the dimension of intent to the statutory authority.  I acknowledge that the determination of intent is within the province of the trier of fact.  See, 
e.g.
, 
Edward M. Cohon & Associates, Ltd. v. First National Bank
, 249 Ill. App. 3d 929, 936-38 (1993).  However, I believe that the language of the 1997 amendment, which is identified as a clarification of the existing statutory authority by the legislature, still leaves the issue of how to determine "sole intent" unclear.  To adhere to the cardinal rule of statutory construction, which is "to ascertain and give effect to the legislative purpose and intent of the statute" (
Olney Trust Bank v. Pitts
, 200 Ill. App. 3d 917, 923 (1990)), it is my opinion that this court "must look to the reasons for the enactment of the statute and purposes to be gained thereby and construe the statute in a manner which is consistent with that purpose."  
Olney Trust Bank
, 200 Ill. App. 3d at 923.

The majority looked at legislative intent, the reasons for the amendment, and the likely purposes to be gained from the statutory authority as amended when it came to the conclusions that (1) the amendment should be considered, and (2) section 5(a) of the Uniform Fraudulent Transfer Act (740 ILCS 160/5(a) (West 1996)) was inapplicable to the subject transfer.  I would use a similar analysis to assist the trial court in defining and determining "sole intent."

The legislative discussion of March 1997 begins by acknowledging that the goal of the statutory authority remains to protect the property of married couples.  More specifically, the legislature was concerned about an unsuspecting wife and/or husband who found herself/himself in a position of losing the family residence as a result of some clandestine or inappropriate action by her/his spouse dealing with the equity in that residence.  The  legislature was careful during the March 1997 debates, as well as the earlier debates, to recognize the rights of creditors at the same time.  However, the later debates make it quite clear that the timing of the transfer of the property into a tenancy by the entirety is very important.

Specifically, a statement by the 1997 amendment sponsor indicates that it is "only in a very limited situation, where after there is literally a judgment entered against you, you can't transfer your property into -- from joint tenancy into tenancy by the entirety; you should do it beforehand."  90th
 Ill. Gen. Assem., Senate Proceedings, March 17, 1997, at 32 (statements of Senator Cullerton).  Furthermore, later in the discussion, Senator Cullerton suggests that the conditions of the Uniform Fraudulent Transfer Act are very clear and that those factors would be helpful in determining actual intent to hinder, delay, or defraud creditors.  90th
 Ill. Gen. Assem., Senate Proceedings, March 17, 1997, at 33.  However, as correctly noted by the majority, the 1997 amendment does not specifically call for an interface with or application of the Uniform Fraudulent Transfer Act, nor do Senator Cullerton's remarks require such an interpretation.  Instead, I would interpret Senator Cullerton's remarks to mean that the factors identified in that act could be used as a place to begin when defining and determining "sole intent."

Therefore, I would remand this matter with instructions that the trial court initially consider the eleven factors from section 5(b) of the Uniform Fraudulent Transfer Act (740 ILCS 160/5(b) (West 1996)) and then specifically look to the timing of the transfer to define and determine "sole intent."