LA SALLE BANK, N.A., as Successor to Freightforce Worldwide, Ltd., and Freightforce International, Inc., Plaintiff-Appellee, v. RICHARD DeCARLO *et al.*, Defendants-Appellants (Freight Force Overseas, Inc., Defendant).

Second District    No. 2—01—1146

Opinion filed January 17, 2003.

John L. Malevitis, of J.L. Malevitis & Associates, Ltd., of Chicago, for appellants.

Sheryl A. Fyock, Michael H. Israel, and Beau T. Greiman, all of Levenfeld Pearlstein, of Chicago, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Defendants Richard DeCarlo and Elaine DeCarlo appeal the judgment of the circuit court of Du Page County, which granted the motion of plaintiff, La Salle Bank, N.A., to set aside the transfer of property into tenancy by the entirety. We affirm.

This appeal arose from an action in which Freightforce Worldwide, Ltd., and Freightforce International, Inc. (Freightforce), had obtained a judgment against defendant Richard DeCarlo and his company, Freight Force Overseas, Inc., for $81,242. Plaintiff succeeded to Freightforce's interest in the judgment. On September 3, 1999, we affirmed the judgment against Richard (*Freightforce Worldwide, Ltd. v. DeCarlo*, No. 2—98—1502 (1999) (unpublished order under Supreme

Court Rule 23). On September 20, 1999, Richard transferred his title to his home, which he had owned with his wife, Elaine, as joint tenants since 1977, into tenancy by the entirety. In order to collect on the judgment, plaintiff filed a motion to set aside the transfer pursuant to section 12—112 of the Code of Civil Procedure (Code) (735 ILCS 5/12—112 (West 1998)).

Richard and Elaine were represented by counsel and each appeared and gave testimony at the evidentiary hearing concerning plaintiff's motion. At the time of the transfer, defendants had more than $200,000 of equity in their property.

Richard testified that, excluding his residential property, he owned less than $4,000 of assets at the time of the transfer. He transferred the title into tenancy by the entirety in September 1999 because a family lawyer suggested it to him in late 1997 or early 1998. According to Richard, the advice given by the attorney was received prior to the judgment in the underlying suit and was given without any awareness of the present litigation. A realtor also suggested it to him sometime in 1997. Richard stated that the purpose of the transfer was "to protect the estate" and his wife. Richard further stated that he was told that his residence would "transfer easier" upon his death because "[our] assets are tied up in the business and we don't really have a business agreement." Richard stated that the advice from the family attorney was the prime motivating factor to transferring title and that it was never his intent to defraud a creditor. Richard claimed that he waited until September 1999 to effect the transfer because he was preoccupied by an illness and a death in his family.

Elaine testified that she first began discussing a possible transfer sometime before 1998 when defendants were taking care of her parents' affairs. She stated that she had no intent to defraud any creditor and that, at the time of the transfer, she had no credit problems or judgments pending against her. Elaine first became aware of the underlying litigation around May 2001. Elaine further testified that Richard had "never discussed business at home" and he failed to disclose that a judgment had been attained against him until she was asked to sign documents in connection with this case.

The trial court first construed section 12—112 of the Code and held that the statute looks to the intent of the transferor who had the debt at the time the transfer was made. Because at issue was Richard's transfer of his interest in the property as a joint tenant, the court found Elaine's transfer of the property to be irrelevant. The court then found that Richard's reasons for the transfer were "vague, inarticulate, specious and totally incredible," and concluded that the transfer of the title to Richard's residence into tenancy by the entirety

"was made with the sole intent to avoid the payment of debts existing at the time of transfer beyond [Richard's] ability to pay those debts as they become due." As a result of the finding, the trial court set aside the transfer into tenancy by the entirety as being fraudulent and in derogation of the rights of plaintiff and held that the title to the property remains vested in Richard and Elaine "as joint tenants and not as tenants in common." The trial court did not make any finding as to Elaine's intent with respect to the transfer. Defendants timely appeal.

■ Plaintiff filed a motion to set aside the transfer under section 12—112, which states in relevant part:

"Any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, *except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due.*" (Emphasis indicates language added by amendment.) Pub. Act 90—514, eff. August 22, 1997.

See also 735 ILCS 5/12—112 (West 1998).

On appeal, defendants first contend that the trial court erred in finding that section 12—112 applies to the debtor and not the debtor's spouse. Defendants assert that the intent of the debtor's spouse is just as relevant in cases where property is transferred into tenancy by the entirety because, in enacting section 12—112, the legislature clearly intended to protect the property of married couples from judgment creditors and, more specifically, to protect the unsuspecting wife from the improper actions of her spouse.

■ Defendants raise an issue of statutory construction, to which we apply a *de novo* standard of review. See *Paris v. Feder*, 179 Ill. 2d 173, 177-78 (1997). Well-established principles guide us in resolving an issue of statutory construction. The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. *Lieb v. Judges' Retirement System*, 314 Ill. App. 3d 87, 92 (2000). To determine the legislature's intent, a court should look first to the statute's plain language and should accord the language its plain and commonly understood meaning. The court must not read into the plain language exceptions, limitations, or conditions that the legislature did not intend. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85 (1999).

We agree with defendants that section 12—112 clearly sets forth the legislative goal of creating a veil of protection for the marital property from prospective creditors by preventing land held in tenancy

by the entirety to be sold to satisfy a judgment. See *Harris Bank St. Charles v. Weber*, 298 Ill. App. 3d 1072, 1077 (1998). In 1997, however, the legislature amended the statute, creating an exception when creditors may force the sale of such property to satisfy a judgment. See Pub. Act 90—514, eff. August 22, 1997. By creating the exception, the legislature unambiguously expressed its intent to allow a creditor to break through the veil of protection when the transfer into tenancy by the entirety is made to avoid the payment of debts which existed at the time of the transfer beyond the transferor's ability to pay those debts as they become due. See *Premier Property Management, Inc. v. Chavez*, 191 Ill. 2d 101, 109 (2000). Because the exception is clearly directed to avoiding the payment of debts existing at the time of the transfer, we believe that the legislature intended that the focus is on the debtor's intent in transferring the property. See *Harris Bank*, 298 Ill. App. 3d at 1081 (property may be excluded from the protection of tenancy by the entirety, depending on transferor's intent).

However, because the legislature could have used the words "with the sole intent of the debtor" if it had so chosen, we must look to legislative history to interpret the statute (see *Harris Bank*, 298 Ill. App. 3d at 1072). The legislature was concerned about an unsuspecting wife or husband who found herself or himself in a position of losing the family residence as a result of some clandestine or inappropriate action by her or his spouse dealing with the equity in that residence. On the other hand, the legislature was cognizant of the rights of creditors and of limiting a debtor from circumventing a judgment debt. In balancing these concerns, the legislature set forth one instance when a creditor can avoid a transfer of property into a tenancy by the entirety. Senator Cullerton voiced this concern. He stated that "only in a very limited situation, where after there is literally a judgment entered against you, you can't transfer your property into—from joint tenancy into tenancy by the entirety; you should do it beforehand." 90th Ill. Gen. Assem., Senate Proceedings, March 17, 1997, at 32 (statements of Senator Cullerton). Senator Cullerton further suggested that the factors listed in the Uniform Fraudulent Transfer Act (Fraudulent Transfer Act) (see 740 ILCS 160/5(b) (West 1998)) would be helpful in determining the intent to hinder, delay, or defraud creditors. 90th Ill. Gen. Assem., Senate Proceedings, March 17, 1997, at 33.

While there is no specific interface between the two statutes, it is apparent that the amendment to section 12—112 of the Code was gleaned, in part, from section 5 of the Fraudulent Transfer Act. Under that section, a transfer made or obligation incurred by a debtor is fraudulent as to a creditor if the *debtor* made the transfer or incurred

the obligation with the intent to hinder, delay, or defraud any creditor of the debtor. 740 ILCS 160/5(a)(1) (West 2000). We believe that the legislature similarly intended that we look to the debtor's intent in determining whether the debtor transferred the property into tenancy by the entirety to escape judgment creditors. Our interpretation is consistent with the goal of protecting a judgment creditor's rights. Accordingly, we hold that the "sole intent" standard in section 12—112 applies to the debtor, not the debtor's spouse.

Defendants assert that the court's analysis in the case of *Premier* supports their argument. In *Premier*, the court found that the "sole intent" standard of section 12—112 requires that "if property is transferred to tenancy by the entirety to place it beyond the reach of the creditors of one spouse *and* to accomplish some other legitimate purpose, the transfer is not avoidable." (Emphasis in original.) *Premier*, 191 Ill. 2d at 110. Defendants interpret this to mean that the focus must be on the intent of both the debtor and his or her spouse. Otherwise, the court would not have added the alternative legitimate reason. We find defendants' reliance on *Premier* to be misplaced.

In *Premier*, the court did not address whose intent the court should focus on in determining when a creditor may avoid a transfer into tenancy by the entirety under section 12—112. Rather, the court determined which statute should govern cases in which a creditor attempts to void a transfer into tenancy by the entirety. In reaching this conclusion, the court compared the "actual intent" standard set forth in section 5 of the Fraudulent Transfer Act with the "sole intent" standard set forth under section 12—112 of the Code. *Premier*, 191 Ill. 2d at 110-11. By adopting the "sole intent" standard, the court found that the legislature made it clear that its aim was to provide spouses holding homestead property in tenancy by the entirety with greater protection from the creditors of one spouse than that provided by the Fraudulent Transfer Act's "actual intent" standard. The court therefore concluded that, in cases where property is transferred into tenancy by the entirety, a judgment creditor must challenge the transfer under section 12—112 of the Code and not section 5 of the Fraudulent Transfer Act. *Premier*, 191 Ill. 2d at 109-11.

Defendants argue that, in adopting the "sole intent" standard, the legislature clearly intended to provide spouses holding homestead property in tenancy by the entirety with greater protection from the creditors of the other spouse, and therefore, as long as any legitimate purpose exists for the transfer, even if it exists alongside a clear purpose to defraud a creditor, the transfer should not be deemed avoidable. We agree that this is the rule enunciated in *Premier*, but we limit its application by looking only to the sole intent of the debtor and not

to the spouse in determining whether a legitimate purpose exists for the transfer. While the trial court found Elaine's testimony regarding her lack of knowledge of the underlying judgment to be credible, we agree with the trial court that the ignorance of one spouse should not shield a transfer made to avoid the payment of a legal obligation. Defendants' misinterpretation of the statute would allow the debtor, however fraudulent his or her intent, to shield a transfer of an asset behind an uninformed spouse. This could not be the legislature's intent. Thus, if a legitimate purpose exists for the transfer, then the debtor would not have the "sole intent" to transfer the property to place it beyond judgment creditors.

Defendants next contend that the trial court erred in finding that the sole intent of the transfer was to defraud creditors. Defendants argue that Richard legitimately wanted to protect the property against future creditors in general, not specifically from plaintiff, and he was following "sound estate planning advice [he] received in 1997 and early 1998 from the family's lawyer." The question of intent must be resolved by the trier of fact, which involves the weighing of evidence and the credibility of the witnesses. *Harris Bank*, 298 Ill. App. 3d at 1081.

■ In a bench trial, the trial court must weigh the evidence and make findings of fact. Where findings of fact depend on the credibility of witnesses, a reviewing court will defer to the findings of the trial court unless they are against the manifest weight of the evidence. *Chicago Investment Corp. v. Dolins*, 107 Ill. 2d 120, 124 (1985). A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242 (1996). We will not substitute our judgment for that of the trier of fact. *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434 (1991).

■ Here, the evidence shows that, excluding the residential property, Richard owned less than $4,000 of assets at the time he transferred the property into tenancy by the entirety. Richard testified that he made the transfer because he was advised to do so by a family attorney and a realtor some time around 1998 and he wanted to protect the estate and make the "transfer easier" upon his death, since his assets were tied up in the business. Perhaps, as plaintiff points out, if Richard had owned his residence individually or as a tenant in common with Elaine, there may have been a legitimate reason to transfer the property to tenancy by the entirety other than to avoid a judgment debt. Similarly, the transfer may not have been so suspect if Richard had completed it at a time when it would not have rendered

him insolvent. We agree that the reasons provided by Richard appear to be "vague, inarticulate," and "specious." Moreover, given that the transfer was made within days after we affirmed the judgment entered against him, we cannot say that the trial court's decision that the transfer to tenancy by the entirety was made with the sole intent to avoid the payment of debts existing at the time of the transfer was against the manifest weight of the evidence.

■ Defendants last contend that the trial court had no jurisdiction to enter a judgment against Elaine's interest in the property because she was never properly joined as a party defendant. Initially, we observe that Elaine failed to cite authority in support of this argument. Such failure violates Supreme Court Rule 341(e)(7), which governs appellate briefs. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001. It is well settled that the failure to cite authority in support of an argument waives the issue. *Scoggin v. Rochelle Community Hospital*, 176 Ill. App. 3d 648, 650 (1988).

We note further that on February 6, 2001, plaintiff filed a motion for default in which it named Elaine as a party defendant for the first time but did not request leave to add her as a party defendant. Elaine never objected to plaintiff's failure to properly join her as a party defendant. In fact, she entered an appearance on April 17, 2001, and participated in the hearing before the trial. Elaine did not object to plaintiff's failure to properly join her as a party defendant until she filed a motion to reconsider the judgment. Generally, the requirement of prior service of process is waived where a person participates in the court proceeding, thereby recognizing the case as being in court. *In re Marriage of Gorman*, 284 Ill. App. 3d 171, 178 (1996). Regardless, Elaine was clearly aware of the proceedings that ultimately affected her property. She cannot at trial assert an interest in the property and on appeal claim that the court had no jurisdiction to enter the order. See *In re Marriage of Verdung*, 126 Ill. 2d 542, 552 (1989).

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GROMETER and KAPALA, JJ., concur.