Docket No. 86045–Agenda 33–May 1999.

PREMIER PROPERTY MANAGEMENT, INC., Appellee, v. JOSE CHAVEZ 
et al
., Appellants.

Opinion filed February 17, 2000.

JUSTICE BILANDIC delivered the opinion of the court:

Jose Chavez conveyed his interest in his personal residence to himself and his spouse, Claudia Chavez, as tenants by the entirety. Plaintiff, Premier Property Management, Inc. (Premier), a creditor of Jose Chavez, filed a complaint in the circuit court of Cook County seeking to have this conveyance set aside as fraudulent. Premier named Jose Chavez and Claudia Chavez as defendants. The circuit court dismissed Premier’s complaint with prejudice. The appellate court reversed this dismissal and remanded for further proceedings. No. 1–97–4066 (unpublished order under Supreme Court Rule 23).  We affirm the judgment of the appellate court.

BACKGROUND

Premier and Jose Chavez had a business relationship. In May of 1995, Premier filed a separate lawsuit against Jose Chavez and El Torero, Inc. At that time, Jose Chavez held title to his residence in his name alone.

On or around June 1, 1996, Jose Chavez conveyed his interest in the residence from himself, as sole owner, to himself and his wife, as tenants by the entirety. This conveyance was recorded on July 19, 1996. In late 1996, a judgment was entered in the separate lawsuit in favor of Premier and against Jose Chavez and El Torero, Inc., for the amount of $190,566.30.

On May 27, 1997, Premier filed the instant action to set aside the conveyance. Premier contended that the conveyance should be set aside as fraudulent pursuant to the terms of the Uniform Fraudulent Transfer Act (hereinafter, Fraudulent Transfer Act) (740 ILCS 160/1 
et seq
. (West 1996)).

Defendants filed a motion to dismiss Premier’s complaint under section 2–619 (735 ILCS 5/2–619 (West 1996)) of the Code of Civil Procedure (735 ILCS 5/1–101 
et seq.
 (West 1996)). Defendants argued that the tenancy by the entirety provision of the Code of Civil Procedure (735 ILCS 5/12–112 (West 1996)) protects their marital residence from being sold to pay a judgment entered against only one of the tenants. According to defendants, the tenancy by the entirety provision offers this protection regardless of whether the conveyance was made with fraudulent intent. In support, defendants relied on a decision of the Second District of the Appellate Court, 
E.J. McKernan Co. v. Gregory
, 268 Ill. App. 3d 383 (1994), 
appeal allowed
, 161 Ill. 2d 525 (1995), 
appeal dismissed with prejudice
, No. 78487 (May 23, 1995).

Premier filed a response to defendants’ motion to dismiss. Premier maintained that a conveyance of property to tenancy by the entirety may be set aside where made with fraudulent intent. In support, Premier relied on 
In re Marriage of Del Giudice
, 287 Ill. App. 3d 215 (1997), a decision of the First District of the Appellate Court. Premier also argued to the circuit court that it was required to follow 
Del Giudice
, the decision in its district, because a conflict existed between 
Del Giudice
 and 
McKernan
.

The circuit court determined that 
Del Giudice
 and 
McKernan
 are reconcilable on their facts. The circuit court then applied 
McKernan 
to the instant case, reasoning that 
McKernan
 is more factually analogous. Consequently, the circuit court granted defendants’ motion to dismiss Premier’s complaint with prejudice.

Premier appealed. The appellate court ruled that 
Del Giudice
 and 
McKernan
 are in direct conflict. No. 1–97–4066 (unpublished order under Supreme Court Rule 23). The appellate court further ruled that the circuit court was bound to follow 
Del Giudice
, the decision in its district. The appellate court therefore reversed the dismissal of Premier’s complaint and remanded the cause for additional proceedings. In doing so, the appellate court noted that the General Assembly had recently amended the tenancy by the entirety provision relied upon by defendants. We allowed defendants’ petition for leave to appeal (177 Ill. 2d R. 315).

ANALYSIS

Tenancy by the entirety is an estate in real property provided for by the Joint Tenancy Act (765 ILCS 1005/0.01 
et seq.
 (West 1996)). Only spouses may hold property in this estate. 765 ILCS 1005/1c (West 1996). In addition, the estate is limited to homestead property. 765 ILCS 1005/1c (West 1996).

I. Tenancy by the Entirety Provision

 According to the tenancy by the entirety provision of the Code of Civil Procedure, holding property in tenancy by the entirety protects spouses in that the property cannot be sold to satisfy the debt of only one spouse. 735 ILCS 5/12–112 (West 1998). At issue here is the extent of that protection when a creditor attempts to avoid a transfer of property to tenancy by the entirety, claiming that it was made with fraudulent intent.

When Jose Chavez conveyed his property to tenancy by the entirety on or around June 1, 1996, the tenancy by the entirety provision stated in pertinent part:

“Any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants.” 735 ILCS 5/12–112 (West 1996).

Premier asserts that Jose Chavez’s conveyance was fraudulent and may be set aside under the Fraudulent Transfer Act. The Fraudulent Transfer Act provides in relevant part that a creditor may avoid a transfer “if the debtor made the transfer *** with actual intent to hinder, delay, or defraud any creditor of the debtor.” 740 ILCS 160/5(a)(1) (West 1996). Our appellate court has reached conflicting conclusions as to whether the Fraudulent Transfer Act may be used against a debtor who is relying on the protection furnished by the tenancy by the entirety provision.

In 
McKernan
, a husband and wife held their home in joint tenancy. A creditor obtained a judgment against the husband and initiated proceedings for a sale of the home. The husband and wife then transferred title to the home to tenancy by the entirety. The husband moved to restrain the sale based on the protection provided by the tenancy by the entirety provision. The creditor asserted that the transfer of title was fraudulent under the Fraudulent Transfer Act. 
McKernan
, 268 Ill. App. 3d at 387-88.

The appellate court in 
McKernan
 held that the Fraudulent Transfer Act can never be applied to property held in tenancy by the entirety. According to the appellate court, the Fraudulent Transfer Act allows creditors to avoid transfers made with actual intent to defraud. Intent, however, “is irrelevant in a tenancy by the entirety conveyance because it simply cannot be fraudulent to engage in conduct that is specifically and unambiguously sanctioned by statute.” 
McKernan
, 268 Ill. App. 3d at 390. The appellate court interpreted the statutes relating to tenancy by the entirety as authorizing transfers like the one at issue. A plain reading of those statutes “makes it clear that no mental state is required to use the tenancy’s protection.” 
McKernan
, 268 Ill. App. 3d at 390. Further, the appellate court reasoned that the legislature intended tenancy by the entirety to shield the marital homestead from the creditors of one spouse. 
McKernan
, 268 Ill. App. 3d at 390-91.

The appellate court in 
Del Giudice
 declined to follow 
McKernan
. In 
Del Giudice
, a husband and wife held their home in joint tenancy. A creditor obtained a judgment against the husband and initiated proceedings for a sale of the home. The husband and wife then transferred title to the home to tenancy by the entirety. The husband moved to restrain the sale based on the protection provided by the tenancy by the entirety provision. The creditor asserted that the transfer of title was fraudulent under the Fraudulent Transfer Act. 
Del Giudice
, 287 Ill. App. 3d at 216.

The appellate court held that, pursuant to the terms of the Fraudulent Transfer Act, a creditor can avoid a transfer of property to tenancy by the entirety if that transfer was made with actual intent to defraud the creditor. The appellate court acknowledged that the statutes concerning tenancy by the entirety allow married couples to effect such transfers, and that the General Assembly intended tenancy by the entirety to shield a marital homestead from the creditors of one spouse. Nonetheless, the court found no indication in those statutes or their legislative history that the General Assembly intended to include fraudulent conduct within the scope of afforded protection. According to the 
Del Giudice
 court, because the Fraudulent Transfer Act may be used to invalidate an otherwise lawful transaction made with fraudulent intent, that Act may be used to invalidate an otherwise lawful transfer of property to tenancy by the entirety if made with fraudulent intent. 
Del Giudice
, 287 Ill. App. 3d at 218.

After 
Del Giudice
 was filed, the General Assembly amended the tenancy by the entirety provision. See Pub. Act 90–514, eff. August 22, 1997; 1997 Ill. Laws 5779. With that amendment, the tenancy by the entirety provision states in pertinent part:

“Any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, 
except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor’s ability to pay those debts as they become due.
” (Emphasis on language added by amendment.) 735 ILCS 5/12–112 (West 1998); 1997 Ill. Laws 5779.

The General Assembly also added language explaining that this amendment “is intended as a clarification of existing law and not as a new enactment.” 735 ILCS 5/12–112 (West 1998); 1997 Ill. Laws 5779.

Initially, we must determine whether the amended version of the tenancy by the entirety provision applies to Jose Chavez’s conveyance. This court in 
First of America Trust Co. v. Armstead
, 171 Ill. 2d 282 (1996), set forth the approach that Illinois reviewing courts follow in deciding whether an amended statute applies on appeal to “pending suits or preexisting causes of action.” 
Dardeen v. Heartland Manor, Inc.
, 186 Ill. 2d 291, 295 (1999). Under 
Armstead
, a reviewing court applies the law as it exists at the time of the appeal, unless doing so would interfere with a vested right. 
Armstead
, 171 Ill. 2d at 290.

Defendants argue that applying the amended version of the tenancy by the entirety provision to them interferes with Claudia Chavez’s vested right to a property interest in her home. We disagree. Although not capable of precise definition, a vested right is an interest that is protected from legislative interference by our due process clause (Ill. Const. 1970, art. I, §2), and has been described as “an expectation that is so far perfected that it cannot be taken away by legislation” or a “complete and unconditional demand or exemption that may be equated with a property interest.” 
Armstead
, 171 Ill. 2d at 290. There is, however, “no vested right in the mere continuance of a law,” and the General Assembly “has an ongoing right to amend a statute.” 
Armstead
, 171 Ill. 2d at 291.

The amendment to the tenancy by the entirety provision merely clarifies what protection is provided to spouses who hold property in that estate. The amendment clarifies that a creditor may break through that protection only where the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor’s ability to pay those debts as they become due. Defendants are asserting, in effect, that Claudia Chavez has a vested right to the preamended tenancy by the entirety provision, as it was interpreted by the 
McKernan
 court. As noted, however, there is no vested right in the mere continuance of a law. 
Armstead
, 171 Ill. 2d at 291. Likewise, there is no vested right in the 
McKernan
 court’s interpretation of the law at issue. The General Assembly has the ongoing right to amend the tenancy by the entirety provision to clarify what protection it intends spouses who hold property in that estate to have. Consequently, because no vested right is at stake, we must apply the law as it now exists.

Having determined that the amended tenancy by the entirety provision applies here, we now address the primary issue before this court: whether the Fraudulent Transfer Act’s actual intent standard may be used to set aside a transfer of property to tenancy by the entirety. We hold that the answer is no, for the following reasons.

As amended, the tenancy by the entirety provision expressly includes its own standard to be used when a creditor challenges a transfer to that estate. Under the standard provided, property held in tenancy by the entirety cannot be sold to satisfy the debt of only one spouse, unless the property was transferred into tenancy by the entirety “with the 
sole intent
 to avoid the payment of debts existing at the time of the transfer beyond the transferor’s ability to pay those debts as they become due.” (Emphasis added.) 735 ILCS 5/12–112 (West 1998). This standard governs when a creditor challenges a transfer of property to tenancy by the entirety. 
Harris Bank St. Charles v. Weber
, 298 Ill. App. 3d 1072, 1081 (1998); 
In re Stacy
, 223 B.R. 132, 136 (N.D. Ill. 1998).

This sole intent standard stands in contrast to the actual intent standard of the Fraudulent Transfer Act. Under the Fraudulent Transfer Act, a creditor may avoid a transfer if the debtor made the transfer with 
actual intent
 to hinder, delay, or defraud any creditor of the debtor. 740 ILCS 160/5(a)(1) (West 1996). Section 5(b) of that Act lists 11 factors that may be considered in determining the debtor’s actual intent in making the transfer. 740 ILCS 160/5(b)(1) through (b)(11) (West 1996). If a sufficient number of the factors are present, the requisite actual intent may be found.

The sole intent standard of the amended tenancy by the entirety provision is substantially different from the actual intent standard of the Fraudulent Transfer Act. The sole intent standard provides greater protection from creditors for transfers of property to tenancy by the entirety. Under the sole intent standard, if property is transferred to tenancy by the entirety to place it beyond the reach of the creditors of one spouse 
and
 to accomplish some other legitimate purpose, the transfer is not avoidable. Such a transfer, however, would be avoidable under the actual intent standard, which only requires any actual intent to defraud a creditor. The General Assembly, by adopting the sole intent standard, has made it clear that it intends to provide spouses holding homestead property in tenancy by the entirety with greater protection from the creditors of one spouse than that provided by the Fraudulent Transfer Act. Accordingly, the Fraudulent Transfer Act’s actual intent standard is not to be used to avoid transfers of property made to tenancy by the entirety. 
Harris Bank St. Charles
, 298 Ill. App. 3d at 1081; 
In re Stacy
, 223 B.R. at 136.

Given that 
Del Giudice
 applied the actual intent standard of the Fraudulent Transfer Act, 
Del Giudice
 is not consistent with the sole intent standard of the amended tenancy by the entirety provision, nor is 
McKernan
, which held that intent is never relevant. Hence, 
Del Giudice
 and 
McKernan
 are no longer correct statements of the law and should be disregarded. 
Harris Bank St. Charles
, 298 Ill. App. 3d at 1080-81.

In the present case, Premier’s complaint to set aside Jose Chavez’s conveyance relied upon the Fraudulent Transfer Act and, ultimately, 
Del Giudice
. Defendants’ motion to dismiss Premier’s complaint relied upon 
McKernan
. Applying 
McKernan
, the circuit court granted defendants’ motion to dismiss with prejudice. We hold, however, that the amended tenancy by the entirety provision governs this case, to the exclusion of the actual intent standard of the Fraudulent Transfer Act, 
Del Giudice
 and 
McKernan
. In light of this holding, Premier must be given the opportunity to amend its complaint to reflect the amendment to the tenancy by the entirety provision. This cause is therefore remanded to the circuit court of Cook County. The circuit court is directed to enter an order dismissing Premier’s complaint without prejudice and to afford Premier the opportunity to file an amended complaint.

II. Single Subject Rule

Defendants next contend that the amended version of the tenancy by the entirety provision cannot be applied to them because the General Assembly enacted that amendment in violation of the single subject rule. The amendment at issue was included within Public Act 90–514 (Pub. Act 90–514, eff. August 22, 1997). According to defendants, Public Act 90–514 violates the single subject rule because it consists of two subjects: tenancy by the entirety and tax collector’s scavenger sales.

The Illinois Constitution provides that bills “shall be confined to one subject.” Ill. Const. 1970, art. IV, §8(d). The term “subject” as set forth therein is liberally construed in favor of upholding a legislative enactment. 
Arangold Corp. v. Zehnder
, 187 Ill. 2d 341, 352 (1999). Although the single subject rule prohibits an enactment from clearly embracing more than one subject on its face, an enactment satisfies the rule so long as the matters included within it have a natural and logical connection to a single subject. 
Arangold Corp.
, 187 Ill. 2d at 351, 354-55.

The General Assembly named Public Act 90–514 “AN ACT in relation to property.” 1997 Ill. Laws 5775. The entire enactment consists of two sections. The first section amends the Property Tax Code (35 ILCS 200/1–1 
et seq.
 (West 1996)) regarding the frequency with which a county tax collector is required to offer mineral rights for sale after having filed a “Scavenger Sale Application” with the court and obtaining a judgment thereon. 1997 Ill. Laws 5775-79. The second section is the amendment to the tenancy by the entirety provision, quoted above. 1997 Ill. Laws 5779. Both of these matters have a natural and logical connection to the subject of property. Therefore, defendants’ single subject challenge is rejected.

The partial dissent asserts that an enactment must satisfy two requirements to satisfy the single subject provision of our constitution. The partial dissent is mistaken. The single subject rule provides that “[b]ills *** shall be confined to one subject.” Ill. Const. 1970, art. IV, §8(d). In enforcing this constitutional provision, this court has always applied the same test: 
i.e.
, an enactment satisfies the rule so long as the matters included within it have a natural and logical connection to a single subject. 
Arangold Corp.
, 187 Ill. 2d at 351-56 (and cases cited therein).

According to the partial dissent, a “second requirement” provides that, to satisfy the single subject rule, the provisions within an enactment must bear, beyond their relationship to a single subject, a relationship to one another. The partial dissent claims that this court’s recent decision of 
People v. Cervantes
, 189 Ill. 2d 80 (1999), “resuscitated” this so-called second requirement by stating that “a legislative act violates the single subject rule when the General Assembly ‘includes within one bill unrelated provisions that by no fair interpretation have any legitimate relation to one another’ ” (
Cervantes
, 189 Ill. 2d at 84, quoting 
People v. Reedy
, 186 Ill. 2d 1, 9 (1999)). The partial dissent further claims that 
Cervantes
 thereby overruled, 
sub silentio
, the holding in 
Arangold Corp. v. Zehnder
, 187 Ill. 2d 341, 356 (1999), that this second requirement does not exist.

The partial dissent misconstrues the language in 
Cervantes
. This language in 
Cervantes
 in no way repudiates 
Arangold
. Language like that used in 
Cervantes
 has often been used in this court’s jurisprudence when explaining the natural and logical connection test. For example, this court has oft repeated:

“ ‘ “Nor is the constitutional provision [that bills shall be confined to one subject] a limitation on the comprehensiveness of the subject; rather, it prohibits the inclusion of ‘discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other.’ ” ’ ” 
Arangold Corp.
, 187 Ill. 2d at 352, quoting 
People ex rel. Ogilvie v. Lewis
, 49 Ill. 2d 476, 487 (1971), quoting 
People ex rel. Gutknecht v. City of Chicago
, 414 Ill. 600, 608 (1953), quoting 
People ex rel. City of Chicago v. Board of County Commissioners
, 355 Ill. 244, 247 (1934).

See also
 Reedy
, 186 Ill. 2d at 9; 
Johnson v. Edgar
, 176 Ill. 2d 499, 515 (1997).

This court in 
Arangold
 was asked to determine whether such language imposes a second requirement that the provisions within an enactment be related to each other. After reviewing all of the applicable precedent, we clarified that no such second requirement had ever existed. 
Arangold Corp.
, 187 Ill. 2d at 354-56 (and cases cited therein). We explained, “This court has never held that the single subject rule imposes a second and additional requirement that the provisions within an enactment be related to each other.” 
Arangold Corp.
, 187 Ill. 2d at 356, 361 (Freeman, C.J., specially concurring). Likewise, this court in 
Cervantes
 did not rely on any such second requirement in rendering that decision. Rather, we struck down the public act at issue there because its diverse provisions concerning crime, the civil Women, Infants and Children Vendor Management Act, and the Secure Residential Youth Care Facilities Licensing Act had no natural and logical connection to a single subject. 
Cervantes
, 189 Ill. 2d at 91-98. Accordingly, we reject the partial dissent’s assertion that 
Cervantes
 somehow “resuscitated” this second requirement. This second requirement has never existed and, thus, there is nothing to resuscitate. 
Cervantes
 and 
Arangold 
are consistent.

CONCLUSION

The circuit court dismissed Premier’s complaint with prejudice. For the reasons set forth above, we reverse that judgment. We remand this cause to the circuit court of Cook County with directions that Premier be afforded the opportunity to file an amended complaint under the amended tenancy by the entirety provision. Accordingly, although for different reasons than those expressed by the appellate court, we affirm the judgment of the appellate court, which reversed the judgment of the circuit court.

Appellate court judgment affirmed;

circuit court judgment reversed;

cause remanded with directions.

JUSTICE FREEMAN, specially concurring:

I agree with the result reached by the court. I write separately, however, to address what I perceive to be an inconsistency in our case law concerning the analysis used to determine whether the amendment to section 12–112 applies to this case.

The court states that the approach Illinois reviewing courts follow in deciding whether an amended statute applies on appeal to pending suits or preexisting causes of action is that set forth in 
First of America Trust Co. v. Armstead
, 171 Ill. 2d 282 (1996). Slip op. at 5. Under 
Armstead
, the reviewing court is to apply the law as it exists at the time of the appeal, unless doing so would interfere with a vested right. Slip op. at 5, citing 
Armstead
, 171 Ill. 2d at 290.

In 
Armstead
, this court declared that the principles applicable for determining whether a statutory amendment applies to an existing controversy on appeal “have not been consistently stated.” 
Armstead
, 171 Ill. 2d at 287-88. We noted that two different analyses had been developed in our case law–the “legislative intent approach” and the “vested rights approach.” 
Armstead
, 171 Ill. 2d at 287-90. Under the former approach, whether an amendment applies retroactively turns upon the intent of the legislature. See 
e.g.
, 
People v. Fiorini
, 143 Ill. 2d 318, 333 (1991) (acknowledging general rule that amendment will be construed as prospective, absent express language to the contrary). Courts that employ the legislative intent analysis presume an application of prospectivity; however, the presumption is rebuttable by either the statute’s “express language or necessary implication.” 
Rivard v. Chicago Fire Fighters Union, Local No. 2
, 122 Ill. 2d 303, 309 (1988). Moreover, the presumption does not apply if the amendment is procedural in nature as opposed to substantive. 
Rivard
, 122 Ill. 2d at 310. See also 
Armstead
, 171 Ill. 2d at 288-89 (collecting cases).

In contrast, courts operating under the “vested rights” approach presume a retroactive application, based upon the general rule that a court should apply the law as it exists at the time of the appeal. See 
Bates v. Board of Education, Allendale Community Consolidated School District No. 17
, 136 Ill. 2d 260, 268-69 (1990). The only exception to this rule exists in cases where the application of the change in the law would affect a vested right, that is, a right protected from legislative interference by the due process clause. 
Armstead
, 171 Ill. 2d at 289.

After comparing the two analyses, this court in 
Armstead
 declared that “the better approach is to apply the law that applies by its terms at the time of the appeal, unless doing so would interfere with a vested right.” 
Armstead
, 171 Ill. 2d at 289. In reaching this conclusion, the court noted that the application of an amendment to an existing controversy does not necessarily constitute “retroactivity.” The court defined a retroactive change in the law as “ ‘ “one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past.” ’ ” 
Armstead
, 171 Ill. 2d at 290, quoting 
United States Steel Credit Union v. Knight
, 32 Ill. 2d 138, 142 (1965), quoting 82 C.J.S. 
Statutes
 §412 (1953). Thus, where no vested rights are involved, because they have not been perfected or because the amendment is procedural in nature, the amended law can be applied to the existing controversy without any retroactive impact. 
Armstead
, 171 Ill. 2d at 290. Under this definition of retroactivity, the court reasoned that “there is little reason to focus on legislative intent.” 
Armstead
, 171 Ill. 2d at 290.

This court, having seemingly eschewed the legislative intent analysis for the vested rights approach in 
Armstead
, nevertheless resurrected the legislative intent analysis just one year later in 
People v. Digirolamo
, 179 Ill. 2d 24 (1997). In resolving whether a statutory amendment applied in the case, we stated the following:

“Generally, an amendment to a statute will be construed to apply prospectively and not retroactively. See 
Rivard v. Chicago Fire Fighters Union, Local No. 2
, 122 Ill. 2d 303, 309 (1988). This presumption can be rebutted by express statutory language or by necessary implication. See 
People v. Fiorini
, 143 Ill. 2d 318, 333 (1991); 
Rivard
, 122 Ill. 2d at 309. There is also an exception to this general rule of prospectivity that arises where the amendment affects only procedure. Where the legislature intends a retroactive application of the amendment and the statutory amendment relates to changes in procedures or remedies, and not substantive rights, it applies retroactively to pending cases. See 
Fiorini
, 143 Ill. 2d at 333; 
Rivard
, 122 Ill. 2d at 310; 
Maiter v. Chicago Board of Education
, 82 Ill. 2d 373, 390 (1980).” 
Digirolamo
, 179 Ill. 2d at 50.

Our opinion in 
Digirolamo
 does not mention 
Armstead
 nor does it speak of the vested rights approach in any way. Moreover, throughout our analysis, we referred specifically to the legislature’s intent in determining whether the amendment should apply retroactively. See 
Digirolamo
, 179 Ill. 2d at 50.

As the foregoing demonstrates, this court has not charted an entirely clear course with respect to the analysis to be used when the retroactivity of a statutory amendment arises. In light of this conflicting precedent, I believe that we should take advantage of the opportunity that this case presents in order to clarify our position on this issue and to provide guidance for our lower courts. Indeed, at least one panel of our appellate court has raised questions concerning the seeming inconsistency between 
Armstead
 and 
Digirolamo
, as has one federal court of appeals judge. See 
White v. Sunrise Healthcare Corp.
 295 Ill. App. 3d 296, 299 (1998) (noting that 
Digirolamo
 did not purport to overrule 
Armstead
 in any respect); 
Kopec v. City of Elmhurst
, 193 F.3d 894, 906 (7th Cir. 1999) (Posner, C.J., dissenting) (observing dichotomy between 
Digirolamo
 and 
Armstead
 and characterizing Illinois law on the question of retroactivity as being “in the state of some muddle”). Put simply, this is a problem that will not go away until this court speaks to the issue definitively.

Courts have traditionally been wary of statutory retroactivity and generally presume that statutes have prospective or forward application. The United States Supreme Court has recognized that “the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.” 
Landgraf v. USI Film Products
, 511 U.S. 244, 265, 128 L. Ed. 2d 229, 252, 114 S. Ct. 1483, 1497 (1994). According to the Court, retroactive statutes “raise particular concerns” as demonstrated by the fact that antiretroactivity principles are expressed in several provisions of the United States Constitution. 
Landgraf
, 511 U.S. at 266, 128 L. Ed. 2d at 252-53, 114 S. Ct. at 1497. Nevertheless, the Constitution’s restrictions are of a limited scope and “[a]bsent a violation of one of those specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope.” 
Landgraf
, 511 U.S. at 267, 128 L. Ed. 2d at 253-54, 114 S. Ct. at 1498. This is so because retroactive legislation can often serve “benign and legitimate purposes.” 
Landgraf
, 511 U.S. at 267-68, 128 L. Ed. 2d at 254, 114 S. Ct. at 1498. Thus, the Court has long held that “[w]ords in a statute ought not to have a retrospective operation, unless they are so clear, strong, and imperative, that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied.” 
United States v. Heth
, 7 U.S. (3 Cranch) 399, 413, 2 L. Ed. 479, 483 (1806). See also 
Schwab v. Doyle
, 258 U.S. 529, 534-35, 66 L. Ed. 747, 752, 42 S. Ct. 391, 392 (1922) (declaring, “[L]aws are not to be considered as applying to cases which arose before their passage unless that intention be clearly declared. *** If the absence of such determining declaration leaves to the statute a double sense, it is the command of the cases, that that which rejects retroactive application must be selected”). In light of these principles, the Court noted that “a requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness.” 
Landgraf
, 511 U.S. at 268, 128 L. Ed. 2d at 254, 114 S. Ct. at 1498. If the legislative branch has made its intent clear, while acting within the limits of its power, then the inquiry concludes. But if the statute lacks an “unambiguous directive” from the legislative branch, the court then “must look elsewhere for guidance” on the retroactivity question. 
Landgraf v. USI Film Products
, 511 U.S. 244, 263, 128 L. Ed. 2d 229, 251, 114 S. Ct. 1483, 1496 (1994). See also 
Lindh v. Murphy
, 521 U.S. 320, 138 L. Ed. 2d 481, 117 S. Ct. 2059 (1997).

However, deciding “when a statute operates ‘retroactively’ is not always a simple or mechanical task” in the absence of express legislative directive. 
Landgraf
, 511 U.S. at 268, 128 L. Ed. 2d at 254, 114 S. Ct. at 1498. Interestingly enough, the Supreme Court has struggled with many of the same inconsistencies that have troubled this court. See 
Landgraf
, 511 U.S. at 263-65, 128 L. Ed. 2d at 251-52, 114 S. Ct. at 1496-97 (noting the “apparent tension between the rules we have espoused [in retroactivity cases] in the absence of an instruction from Congress”). Of particular concern was the maxim, often seen in cases involving retroactivity, that a court should “ ‘apply the law in effect at the time it renders its decision,’ [citation], even though that law was enacted after the events that gave rise to the suit.” 
Landgraf
, 511 U.S. at 273, 128 L. Ed. 2d at 257, 114 S. Ct. at 1501. The Court pointed out, however, that there is no conflict between that principle and a presumption against retroactivity when the statute in question clearly indicates a legislative intent that it apply retroactively. 
Landgraf
, 511 U.S. at 273, 128 L. Ed. 2d at 257, 114 S. Ct. at 1501. Nevertheless, the Court spoke definitively in 
Landgraf
 concerning the inquiry to be used when determining the application of a statutory amendment to a pending case:

“When a case implicates a federal statute enacted after the events in suit, the court’s first task is to determine whether Congress has expressly prescribed the statute’s proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, 
i.e.
, whether it would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.” 
Landgraf
, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505.

A statute does not act retroactively “merely because its is applied in a case arising from conduct antedating the statute’s enactment, [citation], or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.” 
Landgraf
, 511 U.S. at 269-70, 128 L. Ed. 2d at 254-55, 114 S. Ct. at 1499. The Court explained that statutes which affect jurisdiction, injunctive relief or procedural rules normally do not fall into that definition. See 
Landgraf
, 511 U.S. at 273-76, 128 L. Ed. 2d at 257-59, 114 S. Ct. at 1501-03.

In my view, the test enunciated by the Court in 
Landgraf
 properly fixes the initial focus of the inquiry on the language of the statute. The temporal reach of a statute is, in essence, a question of statutory construction, and the cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. 
Paris v. Feder
, 179 Ill. 2d 173, 177 (1997). The judiciary has long held that the best evidence of legislative intent is the “language used in the statute itself, which must be given its plain and ordinary meaning.” 
Paris
, 179 Ill. 2d at 177 (and cases cited therein). The presumption against statutory retroactivity discussed in 
Landgraf
 has no force in cases where the legislature’s intent is clear. The presumption is nothing more than a general rule for interpreting statutes that do not specify their temporal reach. 
Landgraf
, 511 U.S. at 264, 128 L. Ed. 2d at 251, 114 S. Ct. at 1496. Accordingly, I believe that this court should likewise begin any analysis of a statute’s retroactivity with the language contained in the statute at issue. If the statute affirmatively and explicitly requires its application to pending cases or preexisting causes of action, then the court cannot deny retroactivity. When the statute is silent, however, this court should determine whether applying the law in effect at the time of our decision would constitute a retroactive application, 
i.e.
, “whether it would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.” 
Landgraf
, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505. If not, the amended law maybe applied. If applying the amended version of the law would have retroactive effect, we should presume the legislature did not intend that it be so applied. See 
Landgraf
, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505.

In the present case, the first question that must be asked is whether our General Assembly has expressly addressed whether the provision in question applies to pending cases. I believe that it has. The amended act contains the following sentence: “This amendatory Act of 1997 (P.A. 90–514) is intended as a clarification of existing law and not as a new enactment.” 735 ILCS 5/12–112 (West 1998). Such a statement indicates that the legislature intended the amendment to have retroactive reach. See 
Harris Bank St. Charles v. Weber
, 298 Ill. App. 3d 1072, 1079-80 (1998); 
In re Stacy
, 223 B. R. 132, 136 (N.D. Ill. 1998). See also 
Varelis v. Northwestern Memorial Hospital
, 167 Ill. 2d 449, 462-63 (1995). As such, this court should give effect to that expressed intent. See 
Landgraf
, 511 U.S. at 267, 128 L. Ed. 2d at 253-54, 114 S. Ct. at 1498 (noting that absent a violation of one of the specific constitutional antiretroactivity provisions, “the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope”).

Defendants argue that the application of the amended version of section 12-112 to their case would violate rights secured to defendants by the due process clauses of the fourteenth amendment of the United States Constitution and article I of the Illinois Constitution. After reviewing the cases cited by defendants in support of this contention, I am unable to discern any perfected interest interference with which the Constitution would prohibit.

This case presents this court with the chance to reaffirm the use of the traditional “presumption against statutory retroactivity,” a notion “founded upon sound considerations of general policy and practice” and which “accords with long held and widely shared expectations about the usual operation of legislation.” 
Landgraf
, 511 U.S. at 286, 128 L. Ed. 2d at 265, 114 S. Ct. at 1508. The reasonableness of such a rule was best expressed by the United States Supreme Court in 
Landgraf
:

“The presumption against statutory retroactivity had special force in the era in which courts tended to view legislative interference with property and contract rights circumspectly. In this century, legislation has come to supply the dominant means of legal ordering, and circumspection has given way to greater deference to legislative judgments. [Citations.] But while the 
constitutional
 impediments to retroactive civil legislation are now modest, prospectivity remains the appropriate default rule. Because it accords with widely held intuitions about how statutes ordinarily operate, a presumption against retroactivity will generally coincide with legislative and public expectations. Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate.” (Emphasis in original.) 
Landgraf
, 511 U.S. at 272-73, 128 L. Ed. 2d at 256-57, 114 S. Ct. at 1500-01.

It is my hope that the approach I offer here will be considered in future cases.

JUSTICE McMORROW joins in this special concurrence.

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part: 

Under article IV, section 8(d), of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)), the provisions of a statutory enactment must not only have a “natural and logical connection” to a single subject, they must also bear some legitimate relation to one another. 
People v. Reedy
, 186 Ill. 2d 1, 9 (1999); 
Johnson v. Edgar
, 176 Ill. 2d 499, 515 (1997). Although our court repudiated the second of these requirements in 
Arangold Corp. v. Zehnder
, 187 Ill. 2d 341, 356 (1999), we have since reaffirmed that

“a legislative act violates the single subject rule when the General Assembly ‘includes within one bill unrelated provisions that by no fair interpretation have any legitimate relation to one another.’ ” 
People v. Cervantes
, 189 Ill. 2d 80, 84 (1999), quoting 
Reedy
, 186 Ill. 2d at 9.

Under this standard, Public Act 90–514 cannot withstand defendant’s constitutional challenge. The Act’s two sections, denominated as section 5 and section 10, have nothing whatever to do with each other. Section 5 amends section 21–260 of the Property Tax Code (35 ILCS 200/21–260 (West 1998)), dealing with the sale of property for delinquent taxes, to provide that county collectors need not continue to offer mineral rights for sale if those rights have not been sold or confirmed after 10 consecutive years of being offered for sale. Section 10, the provision at issue in this case, has no connection whatsoever with mineral rights, delinquent taxes, or the Property Tax Code. Section 10 merely amends the Code of Civil Procedure’s rule governing execution of judgments against land held in tenancy by the entirety to clarify that the general rule prohibiting such executions is inapplicable where

“the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of transfer beyond the transferor’s ability to pay those debts as they become due.” 735 ILCS 5/12–112 (West 1998).

Because the execution of judgments against land held in tenancy by the entirety is wholly unrelated to a county collector’s sale of mineral rights for delinquent taxes, Public Act 90–514 is invalid under the single subject rule and should not be applied. No contrary conclusion is possible unless we alter our interpretation of article IV, section 8(d), of the Illinois Constitution to eliminate the requirement that the provisions of a bill bear a legitimate relation to one another. We did that once in 
Arangold
, and it was a mistake
.
 Having just resuscitated the requirement in 
Cervantes
, we should not jettison it again here. Our decisions will be useless as precedent if we persist in changing the law with each successive case.

Even if I agreed with the majority’s current interpretation of the single subject rule, I still could not endorse its application of the rule here. Sections 5 and 10 of Public Act 90–514 not only lack any legitimate relationship to one another, they have no natural and logical connection to a single subject. My colleagues’ arguments to the contrary are unpersuasive. They contend the provisions of the law are related to a single subject in the sense that they both pertain to “the subject of property.” They might as well say that both provisions pertain to “money” or to “the law.” A taxonomy so broad is useless. It robs article IV, section 8(d), of any real meaning.

In 
Feuhrmeyer v. City of Chicago
, 57 Ill. 2d 193 (1974), our court considered the validity of a law which amended 30 statutes dealing with professional, vocational and occupational licensing and registration to specify that the power to regulate the various professions, vocations and occupations covered by those statutes was vested solely in the state. We held that the challenged law could not be construed as pertaining to a single subject. In our view, each of the 30 individual laws involved dealt with a separate subject. Accordingly, we ruled that the law violated the single subject rule under article IV, section 8(d), and was invalid. 
Fuehrmeyer
, 57 Ill. 2d at 203-05. 

If the statutes at issue in 
Fuehrmeyer
 did not share a common subject, we cannot seriously contend that a common subject unites sections 5 and 10 of Public Act 90–514. The relationship between those provisions is far more attenuated than the relationship between the provisions at issue in 
Fuehrmeyer
. Contrary to the majority, I believe that Public Act 90–514’s inclusion of so varied and discordant a pair of provisions represents precisely the sort of legislative “logrolling” article IV, section 8(d), of our constitution was designed to prohibit.

Because Public Act 90–514 is unconstitutional, our court should decide this case in accordance with the law in effect prior to the statute’s enactment. Based upon that law, I would affirm the appellate court’s judgment reversing the dismissal of plaintiff’s complaint. Although the preamendment version of section 12–112 of the Code of Civil Procedure (735 ILCS 5/12–112 (West 1994)) provides that property held in tenancy by the entirety “shall not be liable to be sold upon judgment entered *** against only one of the tenants,” the protection afforded by this rule is subject to the provisions of the Uniform Fraudulent Transfer Act (740 ILCS 160/1 
et seq.
 (West 1994)). Accordingly, if a debtor has conveyed his personal residence to himself and his spouse as tenants by the entirety, a creditor can have the conveyance set aside if, as alleged in this case, the debtor made the transfer or incurred the debt “with actual intent to hinder, delay, or defraud” any creditor. 740 ILCS 160/5(a)(1) (West 1994). See 
In re Marriage of Del Giudice
, 287 Ill. App. 3d 215 (1997).

For the foregoing reasons, the judgment of the appellate court should be affirmed and the cause should be remanded for further proceedings. Because Public Act 90–514 is invalid, there is no need to direct the circuit court to afford plaintiff the opportunity to file an amended complaint under Public Act 90–514’s amendment to section 12–112 of the Code of Civil Procedure.

JUSTICE HEIPLE joins in this partial concurrence and partial dissent.