JACK CAVENEY *et al.*, Plaintiffs-Appellees, v. GLEN L. BOWER, Director of the Department of Revenue, *et al.*, Defendants-Appellants.

Second District    No. 2—99—1427

Opinion filed November 28, 2001.

2

O'MALLEY, J., dissenting.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Edmund C. Baird and A. Benjamin Goldgar, Assistant Attorneys General, of counsel), for appellants.

Richard A. Hanson and Theodore R. Bots, both of McDermott, Will & Emery, of Chicago, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Defendants, Glen L. Bower, Judy Baar Topinka, and the Illinois Department of Revenue (collectively, the State), filed an appeal from the trial court's grant of summary judgment in favor of plaintiffs, Jack and Margaret Caveney. We affirmed the trial court's ruling in *Caveney v. Bower*, 319 Ill. App. 3d 13 (2001). On June 6, 2001, our supreme court denied defendants' petition for leave to appeal. However, in the exercise of its supervisory authority, our supreme court vacated this court's judgment and remanded the cause to this court for additional consideration in light of its decision in *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27 (2001). After due consideration of the court's decision in *Commonwealth Edison Co.*, we affirm the judgment of the circuit court.

The Caveneys are shareholders in Panduit Corporation. For the tax years ending December 31, 1993, 1994, and 1995, Panduit elected to be treated as a subchapter S corporation for federal and state income tax purposes. See 26 U.S.C.A. § 1362 (West 1988); 35 ILCS 5/1501(a)(28) (West 1998). During the tax years in question, the Caveneys claimed a research and development tax credit against their Illinois income tax liability, pursuant to section 201(k) of the Illinois Income Tax Act (the Act) (35 ILCS 5/201(k) (West 1996)), for research and development expenditures made by Panduit. The State disallowed the claims and calculated back taxes and interest owed in the amount of $1,091,131.60. The Caveneys paid this sum under protest, then filed suit under the State Officers and Employees Money Disposition Act, seeking an order requiring defendants to return the sum paid under protest. See 30 ILCS 230/1 *et seq.* (West 1998). The parties filed cross-

motions for summary judgment. The trial court granted the Caveneys' motion and entered judgment for the Caveneys. Defendants appealed the trial court's judgment.

The Caveneys argued that a 1999 amendment to section 201(k), part of Public Act 91—644 (Pub. Act 91—644, eff. August 20, 1999), applied to their case and allowed them to take research and development credits for the tax years 1993-95. At the time the Caveneys claimed the tax credit, the Act provided in relevant part:

> "Beginning with tax years ending after July 1, 1990, a taxpayer shall be allowed a credit against the tax imposed by subsections (a) and (b) of this Section for increasing research activities in this State. The credit allowed against the tax imposed by subsections (a) and (b) shall be equal to $6^{1}/2\%$ of the qualifying expenditures for increasing research activities in this State.
>
> For purposes of this subsection, 'qualifying expenditures' means the qualifying expenditures as defined for the federal credit for increasing research activities which would be allowable under Section 41 of the Internal Revenue Code and which are conducted in this State, 'qualifying expenditures for increasing research activities in this State' means the excess of qualifying expenditures for the taxable year in which incurred over qualifying expenditures for the base period, 'qualifying expenditures for the base period' means the average of the qualifying expenditures for each year in the base period, and 'base period' means the 3 taxable years immediately preceding the taxable year for which the determination is being made." 35 ILCS 5/201(k) (West 1992).

However, in 1999, the General Assembly added the following language to section 201(k) of the Act:

> "For partners, shareholders of subchapter S corporations, and owners of limited liability companies, if the liability company is treated as a partnership for purposes of federal and State income taxation, there shall be allowed a credit under this subsection to be determined in accordance with the determination of income and distributive share of income under Sections 702 and 704 and subchapter S of the Internal Revenue Code.
>
> * * *
>
> No inference shall be drawn from this amendatory Act of the 91st General Assembly in construing this Section for taxable years beginning before January 1, 1999." 35 ILCS 5/201(k) (West Supp. 1999).

The legislature amended the Act so that the research and development credit clearly applies to shareholders of subchapter S corporations, such as the Caveneys. In this court's opinion in *Caveney v. Bower*, 319 Ill. App. 3d 13 (2001) (*Caveney I*), we held that under *First*

*of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 289 (1996), the applicable law is the law in effect at the time of the court's decision on appeal and that the Department had no "vested right" in the application of the earlier statute.

■ In *Commonwealth Edison*, our supreme court settled any · conflict concerning the application of statutory amendments to existing controversies by adopting the analysis of the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). The court explained the *Landgraf* approach as follows:

> "Under the *Landgraf* test, if the legislature has clearly indicated what the temporal reach of an amended statute should be, then, absent a constitutional prohibition, that expression of legislative intent must be given effect. However, when the legislature has not indicated what the reach of a statute should be, then the court must determine whether applying the statute would have a retroactive impact, *i.e.*, 'whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' [Citation.] If there would be no retroactive impact, as that term is defined by the court, then the amended law may be applied. [Citation.] If, however, applying the amended version of the law would have a retroactive impact, then the court must presume that the legislature did not intend that it be so applied." *Commonwealth Edison*, 196 Ill. 2d at 38-39.

This approach employs a three-step analysis. Initially, the court must determine whether the legislature has expressly prescribed the statute's proper reach. If there would be no retroactive impact, the amended law may be applied. If it would have a retroactive impact, the new law will not be applied.

When the legislature amended Illinois Income Tax Act section 201(k) to permit shareholders of subchapter S corporations to claim research credits on their individual income tax return, it stated that "no inference" should be drawn from the adoption of the amendatory act. The State does not argue that the no-inference language specifically defines the reach of the amendment, although it does contend that the phrase shows an intent not to apply the amendment retroactively. Therefore, we must determine whether the application of the amendment would have a retroactive impact.

■ There are no hard and fast rules for determining whether a statute would have a "retroactive impact," as referenced in *Commonwealth Edison*. However, this term is more meaningful than the simplistic view set forth by the Department, wherein any new statute that is applied to years prior to its adoption is considered to have a

retroactive effect. In *Landgraf*, adopted by our supreme court in *Commonwealth Edison*, the court traced the meaning of the term "retroactive effect" from its earliest usage to the present. The court quoted with approval an 1814 decision by Justice Story, which stated as follows:

> " '[E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective....' [Citation.]" *Landgraf*, 511 U.S. at 269, 128 L. Ed. 2d at 254, 114 S. Ct. at 1499.

The Court went on to conclude that a statute would have a "retroactive effect" when "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505. Based on this analysis, it is clear that the concept of vested rights is important in determining whether the application of a new statute to past events would have a retroactive effect. By reaffirming the prevailing definition of "retroactive effect" and equating it to the "impairment of vested rights," the decision of our supreme court in *Commonwealth Edison* is consistent with and supports our prior decision in this case.

■ Vested rights are interests protected from legislative interference by the due process clause of our constitution (Ill. Const. 1970, art. I, § 2). *Dardeen v. Heartland Manor, Inc.*, 186 Ill. 2d 291, 295 (1999). A right has not vested until it is so far perfected that it cannot be taken away by legislation and is so unconditional and complete that it may be equated with a property interest. *Dardeen*, 186 Ill. 2d at 295-96. Since the legislature has an ongoing right to amend a statute, there is no vested right in the continuance of a law. *Premier Property Management, Inc. v. Chavez*, 191 Ill. 2d 101, 109 (2000). When an amendment does not reach back to and interfere with a vested right, there is no true retroactive impact. In the absence of a vested right, the application of an amended statute to an existing controversy has no retroactive impact; by definition, the amendment then has only prospective application. See *General Telephone Co. of Illinois v. Johnson*, 103 Ill. 2d 363 (1984); *Richard's Tire Co. v. Zehnder*, 295 Ill. App. 3d 48 (1998).

■ In *Caveney I*, the State did not argue that it had a vested right in the application of the preamendment statute. Indeed, there is no vested right in the mere continuance of a law, since the legislature has an ongoing right to amend a statute. *Premier Property Management*, 191 Ill. 2d at 109. When the legislature did not specify prospective ap-

plication, the State gave up any "vested rights" prospective application would have implicated. *Borden Chemicals & Plastics, L.P. v. Zehnder*, 312 Ill. App. 3d 35, 48 (2000).

The amendment at issue here proclaimed that "no inference" was to be drawn from its passage regarding the tax years in question; therefore, any vested right that the State might have had in the prospective application of section 201(k) was given up. The new statute is not retroactive because its only possible negative impact would affect the State's unasserted interest. Applying the analysis set forth in *Commonwealth Edison*, we determine that application of the tax amendment at issue to prior tax years does not have a retroactive impact, and the amended statute applies to this case.

Because of our disposition of this case on statutory grounds, we need not address the constitutional issues raised in *Caveney I*.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

RAPP, J., concurs.

JUSTICE O'MALLEY, dissenting:

The majority holds that applying the 1999 statutory change to 1993-94 tax years does not give the statutory change retroactive effect because such application does not interfere with a vested right.[1] The majority holds that the new statute is not retroactive because its only possible negative impact would affect the State's unasserted interest.

First, I disagree with the observation that the State's interest is unasserted. The State's conduct, including its defense of this lawsuit, belies that observation.[2] Second, the majority not only fails to indicate why it claims that the State's interest is unasserted but also fails to indicate the consequences of the interest being unasserted. There certainly is no suggestion of waiver, and the analyses in *Landgraf* and *Commonwealth Edison* contain no mention of assertion of an interest.

I also do not understand why the majority couches its vested rights analysis in terms of whether the State has a vested right in prospec-

[1] The majority does not suggest that its conclusion that the State did not have a vested right to collect taxes under the prior law is conditioned on the fact that the State is not a private party. In other words, the majority's analysis does not distinguish the State from a private party when determining whether the right in question is a "vested right."

[2] This is true even if the General Assembly failed to expressly state that the amendment was prospective.

tive application of the amendment rather than determining whether the amendment takes away vested rights acquired under existing law, as suggested by the Justice Story quotation contained in *Commonwealth Edison* and *Landgraf* and in the majority opinion. 326 Ill. App. 3d at 5.

Most importantly, though, I disagree with the majority's reliance on the ambivalent concept of "vested" and its conclusion that *Commonwealth Edison* equated retroactive effect with the impairment of vested rights. In *Commonwealth Edison*, our supreme court explained that, in the analysis involved in determining whether to apply a new statutory amendment to an existing controversy, the question is not simply whether the rights allegedly impaired are labeled "vested" or "nonvested." See *Commonwealth Edison*, 196 Ill. 2d at 47. Rather, the court stated:

> " 'The question of the validity of the application of a statute rests on subtle judgments concerning the fairness or unfairness of applying the new statutory rule to affect interests which accrued out of events which transpired when a different prior rule of law was in force. One fundamental consideration of fairness is that settled expectations honestly arrived at with respect to substantial interests ought not to be defeated. [Citation.] The determination of whether the application of the statute unreasonably infringes upon the rights of those to whom it applies involves a balancing and discrimination between reasons for and against the application of the statute to this class of individuals. [Citation.]' " *Commonwealth Edison*, 196 Ill. 2d at 47, quoting *Moore v. Jackson Park Hospital*, 95 Ill. 2d 223, 241-42 (1983) (Ryan, C.J., specially concurring, joined by Underwood and Moran, JJ.).

*Commonwealth Edison* also affirmed that " '[a]nalysis of the practical considerations influencing the question whether a retroactive application of a new law is fair and just should afford more meaningful standards of judgment than either catchpenny phrases or the ambivalent concept of "vested." ' " *Commonwealth Edison*, 196 Ill. 2d at 47-48, quoting 2 N. Singer, Sutherland on Statutory Construction § 41.05, at 369 (5th ed. 1993).

The majority quotes *Commonwealth Edison*'s explanation of the *Landgraf* approach but fails to notice that both of those cases avoid the ambivalent concept of "vested." The *Landgraf* test is " 'whether it would impair rights a party possessed when he acted.' " *Commonwealth Edison*, 196 Ill. 2d at 37, quoting *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 1145 S. Ct. at 1505. The majority fails to note that the word "vested" does not appear before "rights" in this quote. If the State had a right to collect taxes in a greater amount

from the Caveneys before the amendment, then the application of the amendment to the prior tax years impairs that right and imposes a new duty to refund money to the Caveneys with respect to transactions already completed. The State correctly argues that the effect of applying the statute to preamendment tax years plainly would be to attach new legal consequences to completed events. If applied retroactively, the amendment would change the tax consequences of preamendment corporate activity. Corporate expenditures that did not entitle subchapter S shareholders to their own income tax credits in the tax years when the expenditures were made now would do so.

*Landgraf* observed that the largest category of cases where the presumption against retroactivity has been applied has consisted of new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance. *Landgraf*, 511 U.S. at 271, 128 L. Ed. 2d at 256, 114 S. Ct. at 1500. Applying tax credit amendments to prior tax years absent a clear legislative directive clearly interferes with the State's ability to plan and budget for public expenditures, a matter in which predictability and stability are even more important than in private contractual or property rights situations.

The majority seems to hold that *Commonwealth Edison*'s adoption of the *Landgraf* analysis amounted to nothing more than the reaffirmation of *Armstead*, which the majority reads as calling for a default rule in favor of applying new law to antecedent events absent a "vested" rights problem or legislative direction to the contrary. But *Landgraf* expressly held that "prospectivity remains the appropriate default rule." *Landgraf*, 511 U.S. at 272, 128 L. Ed. 2d at 257, 114 S. Ct. at 1501.

Finally, *Landgraf* pointed out that decisions to apply new law to antecedent events have been limited to situations where analysis of the temporal scope of the law itself required such application (*i.e.*, legislative intent) or where the case involved either prospective relief (*e.g.*, injunctive relief), procedural matters (*e.g.*, jurisdiction), or collateral issues (*e.g.*, attorney fees). *Landgraf*, 511 U.S. at 273-79, 128 L. Ed. 2d at 257-61, 114 S. Ct. at 1501-04. *Landgraf*'s point in categorizing these cases was to "make it clear that *Bradley* [*v. School Board of Richmond*, 416 U.S. 696, 40 L. Ed. 2d 476, 94 S. Ct. 2006 (1974),] did not alter the well-settled presumption against application of the class of new statutes that would have genuinely 'retroactive' effect." *Landgraf*, 511 U.S. at 277, 128 L. Ed. 2d at 260, 114 S. Ct. at 1503. In other words, *Bradley* and the other cases did not involve genuine retroactivity because they concerned either prospective relief, procedural matters, or collateral issues. The use of "retroactive" versus "genuinely

retroactive" is a fine point, and the final explication of the presumption helpfully avoids these terms and holds:

"The authorities we relied upon in *Bradley* lend further support to the conclusion that we did not intend to displace the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment. [Citation.]" *Landgraf*, 511 U.S. at 278, 128 L. Ed. 2d at 260, 114 S. Ct. at 1504.

The quote makes clear that the *Landgraf* presumption against retroactivity admits only narrow exceptions, such as situations involving prospective relief, procedural matters, or collateral issues.

The State's right to collect taxes from the Caveneys and their obligation to pay taxes clearly trigger what *Landgraf* called the "traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Landgraf*, 511 U.S. at 278, 128 L. Ed. 2d at 260, 114 S. Ct. at 1504.